IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ELLEN VALEEN HORROCKS,<br><br>        Plaintiff,<br><br><br><br>            vs.<br><br><br>DAGGETT COUNTY, a political subdivision<br>of the State of Utah<br><br>        Defendant. | ORDER DENYING DEFENDANT'S<br>MOTION FOR SUMMARY<br>JUDGMENT<br><br><br><br>Case No. 2:05-CV-00238 PGC |

        Defendant Daggett County's motion for summary judgment is now before the court.

Plaintiff Ellen Valeen Horrocks filed a complaint against the County alleging that it owed her

overtime compensation and thereby violated the Fair Labor Standards Act (FLSA).[1]  The County

argues in its motion for summary judgment that Ms. Horrocks filed her suit after the applicable

statute of limitations had run, and that Ms. Horrocks is an exempt employee not entitled to

overtime benefits under the FLSA.  Ms. Horrocks argues that the County's actions resulting in its

failure to pay her were willful, and therefore the statute of limitations on her action has not run.

She also argues that she was not an exempt employee according to the FLSA definition.  For the

_____

[1] 29 U.S.C. § 201 *et seq.*

reasons discussed below, the court finds that there continue to be disputed issues of material fact

and DENIES the County's motion for summary judgment [#17].

## BACKGROUND

For the purpose of resolving this motion for summary judgment, the court finds the

following facts.  The County employed Ms. Horrocks from September of 1998 through February

of 2003.  She worked as the "jail commander" for the County jail during that time.  Ms. Horrocks

testified that she "wrote the [job descriptions] at the jail that were later incorporated down at the

County" and testifies that she was responsible for writing up the job classifications and

descriptions as part of her responsibilities as the jail commander.[2]

According to the Daggett County Handbook, the "jail commander is the senior command

officer in the jail, and as such, serves as the Division Commander (or Department Head) for the

Corrections Division of the Sheriff's Department."[3]  The County Sheriff appoints the jail

commander, who serves at the sheriff's pleasure and is directly responsible to the Chief Deputy

and the Sheriff.[4]  The jail commander has "administrative responsibility for supervision,

maintenance, management and operations of the Jail Division."[5]  The jail commander

> directs, supervises, and commands all operations of the Corrections Division, and shall
> have responsibility for maintaining uniformity and consistency in jail operations, the

---

[2] Pl's Memo. in Opp. of Mot. for Summ. Judg., Docket No. 19, Ex.2, at 7-:18-71:16 (June 30, 2006) (Ellen Horrocks Deposition).

[3] Def's Memo. in Supp. of Sum. Judg., Docket No. 18, Ex.C, County Handbook at 358 (May 31, 2006).

[4] County Handbook at 14.

[5] *Id*.

maintenance of all jail equipment, the development, implementation, maintenance, review, and revision of the Jail Policy and Procedures Manual, as well as consistency in the application and enforcement of those policies and procedures.[6]

The jail commander also "assists senior administrators of the Sheriff's Department for the planning and development of long and short range goals for the jail, and in the development and implementation of specific standards and operational objective for the overall management and operation of the facility."[7]  The jail commander is directly responsible to the Sheriff and "shall represent the Corrections Division and it[]s needs to the Sheriff's Department Administration, . . . Board of County Commissioners, . . . and other law enforcement agencies."[8]

According to the County Handbook, the jail commander engages in a number of duties. She "maintain[s] daily, monthly and annual records and reports, . . . is responsible for all decisions affecting policy and procedures for jail operations, . . . and . . . conduct[s] periodic staff meetings and training classes . . . for all staff members."[9]  She also "shall evaluate problems, develop solutions, implement new policy, and revise existing policy as the need arises."[10]  The jail commander is responsible for training requirements, supervises the development of jail staff training, and is "responsible for the administrative supervision of the jail staff, to include shift assignments, training schedules, and maintaining the required State certification of all corrections

---

[6] *Id.* at 358.

[7] *Id.* at 358-59.

[8] *Id.* at 359.

[9] *Id.*

[10] *Id.*

officers."[11]  On a daily basis Ms. Horrocks also testified that she did "a little bit of everything" in the jail, including working with inmates, assisting the jailers, helping out in the kitchen and with meals, and doing paperwork.[12]  Ms. Horrocks had supervisory authority over approximately twenty jail employees, though she states that she had no authority to terminate any of the employees.[13]  She did, however, have the ability to "make recommendations" on firing, and did so at one time,[14] but the recommended person quit before they were terminated.[15]

The County Jail is a separate facility from the Sheriff's Office, although Ms. Horrocks testifies that the Sheriff was present on a daily basis.[16]  The Sheriff determined Ms. Horrocks' shift and hours of work[17] and was aware of the hours that she worked.[18]  In return for Ms. Horrocks' work, the County paid her a salary which remained fixed regardless of the number of hours she worked.[19]  Ms. Horrocks claims, however, that she was promised that she would be paid for any "compensatory time;" the hours she worked in addition to her scheduled shift.  Ms.

---

[11] *Id*. at 359-60.

[12] Horrocks Deposition at 34:23-35:4; 79:10-80:25.

[13] *Id*. at 65:14-66:16.

[14] *Id*. at 68:17-69:13.

[15] *Id*. at 65:14-66:16.

[16] *Id*. at 59:6-60:16.

[17] *Id*. at 14:11-18.

[18] *Id*. at 59:6-23.

[19] *Id*. at 35:12-36:11.

Horrocks kept a monthly time sheet which summarized the number of hours she worked; recording the amount of compensatory time, vacation leave, and sick leave.  Ms. Horrocks claims that during the course of her employment with the County she accumulated substantial compensatory time for which she was never paid.

On about February 28, 2003, Ms. Horrocks resigned from her position with the County. On March 28, 2005, Ms. Horrocks filed her complaint seeking payment for compensatory time accumulated.  Ms. Horrocks claimed that the County had violated the overtime provisions of the FLSA and that its refusal to pay her for the compensatory time was willful and in disregard of the FLSA because the County had known she was not an exempt employee.  In support of her complaint, Ms. Horrocks noted that the County previously paid compensatory time to at least two other employees who had left the County's employment.  Ms. Horrocks claimed that these two employees had parallel positions and were similarly situated to herself, though she was not compensated for her compensatory time.

The County sought summary judgment on two grounds: first, that Ms. Horrocks had not shown it willfully violated FLSA and therefore she filed her suit outside of the applicable two year statute of limitations; and second, that her position as jail commander was exempt from the FLSA overtime positions.  Ms. Horrocks argued against both of those assertions in her opposition memorandum.  The motion is now fully briefed.

## STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[20]  "The court must examine the record to determine whether any genuine issue of material fact is in dispute, and must construe the facts and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party."[21]  The County has moved for summary judgment on Ms. Horrocks' asserted claims, so all reasonable inferences will be made in the light most favorable to Ms. Horrocks.

### DISCUSSION

*A. It Is Still Disputed Whether Ms. Horrocks Sufficiently Demonstrates a Willful Violation of FLSA.*

Although FLSA has a two-year statute of limitations, the statute of limitations for a willful violation is actually three years.[22]  Ms. Horrocks left her employ on February 28, 2003, and filed her complaint on March 28, 2005.  She filed her complaint outside of the two-year statute of limitations for a normal, non-willful violation of FLSA, but within the three year statute of limitations for willful violations of FLSA.  The court must first determine whether Ms. Horrocks has satisfied her burden to demonstrate a willful violation of FLSA, in which case Ms. Horrocks' complaint falls under the three-year statute of limitations.  The court will then consider the merits of the County's exemption arguments.

Ms. Horrocks bears the burden for proving that the actions taken by Daggett County were

---

[20] Fed. R. Civ. P. 56(c).

[21] *Holt v. Grand Lake Mental Health Ctr., Inc.*, 443 F.3d 762, 765 (10th Cir. 2006) (citing *Curtis v. Oklahoma City Pub. Sch. Bd. of Educ.,* 147 F.3d 1200, 1214 (10th Cir. 1998)).

[22] 29 U.S.C. § 255(a).

knowing or in reckless disregard of FLSA.[23]  The determination of willfulness is a mixed question of law and fact.[24]  "The standard for willful violations [of FLSA] is whether the employer 'knew or showed reckless disregard for the matter of whether its conduct was prohibited by [FLSA].'"[25]  Willfulness does not have to be established though litigation[26] or through prior violations.[27]

If an employer acts reasonably in determining its legal obligation under FLSA, its action cannot be deemed willful for the purposes of the three-year statute of limitations period.[28] According to the Fifth Circuit, good faith and reasonableness, including a putative employer's consultation with an attorney, are defenses to allegations of willfulness.[29]  Such good faith and reasonableness requires some investigation of potential liability under FLSA.  But willfulness can also apply where the employer disregards the very "possibility" that it was violating FLSA.[30] Of course, the court is not to presume that conduct was willful in the absence of evidence,[31] as

---

[23] *Gilligan v. City of Emporia, Kansas*, 986 F.2d 410, 413 (10th Cir. 1993).

[24] *Reich v. Monfort, Inc.*, 144 F.3d 1329, 1334 (10th Cir. 1998)

[25] *Id*. (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).

[26]*Id.* at 1335.

[27] *Dole v. Elliot Travel and Tours, Inc.*, 942 F.2d 962, 967 (6th Cir. 1991).

[28] *McLaughlin*, 486 U.S. at 135 n. 13.

[29] *Halferty v. Pulse Drug Co.*, 826 F.2d 2, 3-4 (5th Cir. 1987).

[30] *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 141 (2d Cir. 1999).

[31] *Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 356 (5th Cir. 1990).

the burden rests squarely on Ms. Horrocks to proffer such evidence.

Ms. Horrocks offers several justifications for her belief that the County willfully violated FLSA.  First, Ms. Horrocks argues that the County paid overtime to two other similarly situated employees.  Second, she argues that the County's Personnel Policies and Procedures manual "explicitly recognized that compensatory time could be accrued, up to 480 hours per year, as authorized by the wage and hour regulations."[32]  Third, she argues that the County never informed her that it considered her to be exempt from the FLSA overtime provisions.  And fourth, she argues that the former Sheriff, Gaylen Jarvie, promised her that she would be paid for accumulated compensatory time.

Ms. Horrocks provides affidavits and support for some of her arguments.  Mark Watkins' affidavit states that at "the time I terminated my employment[,] I was paid my vacation and comp. time that I had accrued [during the work period]"[33] and "I received pay from Daggett County for all accumulated comp time I had."[34]  And when his title changed from Sergeant to Chief Deputy, Mr. Watkins "was advised by Sheriff Jarvie that Chief Deputy Ray Ruble was going to get paid approx[imately] $30,000 in comp time."[35]

Former Sheriff Gaylen Jarvie's deposition states that he explained to Ms. Horrocks "that she would not be paid overtime for excess hours worked over her forty hour work week [but] . . .

---

[32] Pl's Memo. in Opp. of Mot. for Summ. Judg., Docket No. 19, at 7 (June 30, 2006).

[33] *Id*. Ex. 3, Mark J. Watkins Affidavit, ¶ 3.

[34] *Id*. at ¶ 8.

[35] *Id*. at ¶ 5.

that in lieu of overtime pay she would receive compensation time for her excess hours."[36]  He also "made the representation that she would receive compensation time for excess hours worked based on the fact that the under-sheriff and patrol deputies employed by Daggett County worked under the same arrangement, because[] Daggett County did not pay overtime to the Sheriff's Office employees."[37]

Finally, Ms. Horrocks testifies in her deposition that "I was told that I would be paid for my overtime when I started."[38]  She testifies that Sheriff Jarvie told her that "I would be compensated for my overtime, but he explained to me that they didn't pay you, that you got comp time, you acquired and used comp time.  He explained to me [before I was hired] how that worked."[39]  According to Ms. Horrocks, Sheriff Jarvie indicated that "only the elected officials did not accumulate comp time" and "if you didn't get to use all those comp time hours . . . you would be paid out if you terminated."[40]  And Sheriff Jarvie also told Ms. Horrocks that "you would acquire it at the time and a half rate just like if you were being paid . . . and then they would pay you your ending balance."[41]

Relating to her allegations that Daggett County willfully or recklessly violated the

---

[36] *Id*. Ex. 1, Sheriff Gaylen Jarvie Affidavit, ¶ 5.

[37] *Id*. at ¶ 6.

[38] Horrocks Deposition at 50:1-2.

[39] *Id*. at 50:8-16.

[40] *Id*. at 51:13-23.

[41] *Id*. at 52:3-6.

FLSA, Ms. Horrocks bases her determination of willfullness on the fact that "they didn't pay me – There was no reason for them not to."[42]  She also alleges that "I don't think that they checked to make sure that they could legally or not legally pay me. . . . . Because they didn't pay me. . . . There was just no reason for them not to pay me.  They knew that I was accumulating comp time, and why they didn't pay me – It was just – They just didn't do it.  They felt they could get away with not paying me."[43]  She also states that Daggett County "never considered me exempt.  They never classified me as exempt."[44]  Ms. Horrocks justification for this statement is that "Well, I would think they would have told me. . . . I was told that I would be paid for my overtime when I started. . . . If they changed that, they should have told me."[45]

"While mere knowledge that the FLSA 'was in the picture' may not be enough to sustain a finding of wilfulness, . . . prior violations, especially when combined with the undisputed testimony of the former employees, prove, at the very least, reckless disregard" constituting a willful violation of the FLSA.[46]  In this case, there are no prior violations of the FLSA noted on the record.  Ms. Horrocks has provided, however, *undisputed* testimony regarding the statements made by her superiors and others in her office regarding whether they would be paid compensation time for overtime hours worked.  The County does not dispute the record and

---

[42] *Id*. at 52:7-16.

[43] *Id*. at 52:18-53:1.

[44] *Id*. at 49:15-20.

[45] *Id*. at 49:21-50:5.

[46] *Chao v. A-One Med. Servs.*, 346 F.3d 908, 919 (9th Cir. 2003) (quoting *McLaughlin*, 486 U.S. at 132-35).

affidavits provided by Ms. Horrocks, but argues that she has not provided *enough* evidence that the County willfully violated the FLSA.

Sole reliance on Ms. Horrocks' own statements that Daggett County willfully or recklessly violated the FLSA certainly gives the court pause. She provides evidence that might show that Daggett County acted improperly, but her own statements fail to provide enough evidence requiring the court to deny summary judgment on this issue. There is undisputed evidence , however, that Daggett County agreed to pay two other employees their accrued overtime pay, as well as evidence that Ms. Horrocks' supervisor seemingly made a deal to pay her overtime. Sheriff Jarvie testifies that "[I]n order to allay Ms. Horrocks' fears and apprehension[,] I met with [her and] . . . explained . . . that the jail budget was tight and that she would not be paid overtime for excess hours worked over her forty hour work week. I also explained to her that in lieu of overtime pay[,] she would receive compensation time for her excess hours."[47] Sheriff Jarvie also "made the representation that she would receive compensation time for excess hours worked based on the fact that the under-sheriff and patrol deputies employed by Daggett County worked under the same arrangement, because, Daggett County did not pay overtime to the Sheriff's Office employees."[48] These statements indicate awareness of actual payment requirements, but does not concretely demonstrate that Daggett County knew it was violating the FLSA, or recklessly disregarded the possibility.

Daggett County has failed, however, to provide any rebuttal evidence demonstrating that

---

[47] Sheriff Jarvie Affidavit at ¶ 5.

[48] *Id*. at ¶ 6.

any of the statements made in the affidavits or Ms. Horrocks' deposition are false or misleading. Nor has it provided any evidence that it reasonably ascertained, either through a labor attorney, or a county attorney, or anyone with any experience examining the Department of Labor standards, that Ms. Horrocks' position was exempt from the FLSA.  Such evidence could be easily provided either by an attorney's memo, or by affidavit, but the court has seen nothing yet as to this issue. Indeed, certain courts have held that reliance on advice from the employer's attorney can show a lack of willfulness,[49] but Daggett County has failed to allege such a fact and solely relies on the fact that Ms. Horrocks has the burden of proof.  And both 29 C.F.R. § 578.3(c)(2) and § 578.3(c)(3) demonstrate that an employer is expected to receive advice from an attorney for the purposes of applying the FLSA.  To wit, Daggett County "doth protest too much"[50] without providing anything resembling rebuttal evidence.

The court is left with certain evidence on one side, and no evidence on the other.  While the burden is certainly on Ms. Horrocks to demonstrate a willful violation of the FLSA, she has clearly provided enough evidence that should bring this question to the jury.  The court is wary of acting as a definite fact-finder on this issue, given that Ms. Horrocks' undisputed evidence certainly begs the question why she was not paid overtime compensation.  Given the undisputed testimony that two other employees received their overtime compensation, that Ms. Horrocks was promised this compensation by her employer, and also that the County's wage regulations

---

[49] *See, e.g.*, *Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 356 (5th Cir. 1990).  *But see Craven v. Minot*, 730 F. Supp. 1511, 1514 (D.N.D. 1989)

[50] WILLIAM SHAKESPEARE, HAMLET at 239.

handbook provided for 480 hours of compensation time, the court finds the Ms. Horrocks has

met her burden to survive summary judgment on whether the County willfully violated the

FLSA.  There continue to be disputed issues of material fact on this issue which prevent the

granting of summary judgment on this claim.  Of course, whether or not the County *actually*

engaged in a willful violation will be a question for the jury.

> *B. The County Has Not Demonstrated Enough for Summary Judgment to Show that Ms. Horrocks' Employment Falls Under Either FLSA Exemption.*

The County also argues that Ms. Horrocks was not entitled to the FLSA

overtime/compensation pay because she falls under both the executive exemption and the

administrative exemption.  Ms. Horrocks counters that she does not meet the requirements for

either of these tests.  Exemptions to the FLSA are to be narrowly construed; the employer must

show that the employee fits "plainly and unmistakenly within the exemption's terms" – under

both the "salary" test and the "duties" test.[51]  And Daggett County must prove that the employee

is exempt by "clear and affirmative" evidence.[52]

1. The FLSA Executive Exemption.

The FLSA sets forth a "short test" and a "long test" for determining whether an employee

qualifies for the "executive" exemption.[53]  The short test applies to an employee that is paid more

than $250 dollars per week, and "whose primary duty consists of the management of the

enterprise in which the employee is employed . . . and includes the customary and regular

---

[51] *See Reich v. State of Wyoming,* 993 F.2d 739, 741 (10th Cir. 1993).

[52] *Donovan v. United Video, Inc.*, 725 F.2d 577, 581 (10th Cir. 1984).

[53] 29 C.F.R. § 541.1.

direction of the work of two or more other employees therein."[54]   According to the Federal

Regulations, under the short test, the following activities are considered management duties:

> Interviewing, selecting, and training employees; setting and adjusting their rates of pay
> and hours of work; directing their work; . . . appraising their productivity and efficiency
> for the purpose of recommending promotions or other changes in their status, handling
> their complaints and grievances and disciplining them when necessary; planning their
> work; determining the techniques to be used; apportioning the work among the workers;
> determining the type of . . . supplies . . . to be used or merchandise to be bought, stocked
> and sold; controlling the flow and distribution of materials or merchandise and supplies;
> providing for the safety of the men and the property.[55]

An employee who spends over 50 percent of their time in management would have management

as their primary duty.[56]   If it is determined that the employee spent less than 50% of their time on

management duties, however, an employee might nevertheless have management as their primary

duty if other pertinent factors apply.[57]   These four factors include "the relative importance of

managerial duties as compared with other types of duties, the frequency with which the employee

exercises discretionary powers, [their] relative freedom from supervision, and the relationship

between [their] salary and the wages paid other employees for the kind of nonexempt work

performed by the supervisor."[58]   As stated earlier, the burden is on the employer to show that the

---

[54] *Id*.

[55] *Id*. § 541.102(b).

[56] *Id*. § 541.03

[57] *Id*.

[58] *Dept. of Labor v. City of Sapulpa*, 30 F.3d 1285, 1287 (10th Cir. 1994) (quoting 29
C.F.R. § 541.103).

employee falls "plainly and unmistakenly within the exemption's terms."[59]

Ms. Horrocks concedes that she has met the first and third part of the executive exempt short test because she was paid a salary in excess of $250 dollars per week and she regularly supervised more than two employees.  The parties dispute whether Ms. Horrocks' primary duty was management, however.  In support of its argument, the County argues that the jail commander's responsibilities, as defined in a section of the County Handbook written by Ms. Horrocks, included "supervision, maintenance, management and operations of the Jail."[60]  The County concludes that the County Handbook demonstrates that the jail commander's primary duty is "management" of the jail.  Ms. Horrocks concedes that the County Handbook did accurately portray some of the jail commander's responsibilities and that she performed some supervisory tasks.  Ms. Horrocks argues, however, that the County has not demonstrated she spent a predominant amount of her time on tasks that would make her subject to the executive exemption of the FLSA.

Although the County has shown that Ms. Horrocks had a number of managerial responsibilities, it has not conclusively demonstrated that her primary duty was management, therefore making her exempt as an executive employee.  First, the County has provided no evidence that Ms. Horrocks was engaged in managerial or supervisory functions more than 50% of the time.  Second, the County has not shown that the four other pertinent factors support a

---

[59] *Reich v. State of Wyoming,* 993 F.2d 739, 741 (10th Cir. 1993).

[60] Def's Reply Memo. in Support of Mot. for Summ. Judg., Docket No. 21, at 5 (July 20, 2006).

conclusion that Ms. Horrocks' primary duty was managerial.  The County has not "plainly or

unmistakenly" shown that Ms. Horrocks' managerial duties were more important than her other

duties, that she frequently exercised any discretionary powers, that she had considerable freedom

from supervision, or that she had a salary that substantially differed from non-exempt employees.

The County has failed to provide undisputed material facts demonstrating that Ms. Horrocks'

exemption from the overtime provisions of the FLSA on account of being an executive

employee.  Summary judgment on this issue is inappropriate at this juncture.

2. The FLSA Administrative Exemption

There is also a "short test" and a "long test" for determining whether an employee falls

within the "administrative" exemption of the FLSA.[61]  The short test applies when an employee

is compensated a salary in excess of $250 per week and whose primary duty consists of:

(1) nonmanual work directly related to management policies or general business operations, and

(2) includes work requiring the exercise of discretion and independent judgment.[62]  The Federal

Regulations state that performing some manual work does not remove an otherwise exempt

employee from  "white-collar" status if it such work directly and closely relates to her work

requiring the exercise of discretion and independent judgment.[63]  Further, work that is directly

related to management policies or general business operations describes those types of activities

---

[61] 29 C.F.R. § 541.2

[62] 29 C.F.R. § 541.2(e)(2).

[63] 29 C.F.R. § 541.203(a).

relating to administrative operations as distinguished from production.[64]  "The administrative

operations of the business include. . . . advising the management, planning, negotiating,

representing the company, purchasing, promoting sales, and business research control."[65]

Finally, the Federal Regulations provide the following description of discretion and independent

judgment:

> In general, the exercise of discretion and independent judgment involves the
> comparison and the evaluation of possible courses of conduct and acting or
> making a decision after the various possibilities have been considered.  The term
>  . . . implies that the person has the authority or power to make an independent
> choice, free from immediate direction or supervision and with respect to matters
> of significance.[66]

Ms. Horrocks concedes that she was a salaried employee making in excess of

$250 per week.  The parties dispute whether Ms. Horrocks' primary duties consisted of

nonmanual work directly related to management policies or general business operations,

and whether this work required Ms. Horrocks to exercise discretion and independent

judgment.  The County again relies on the County Handbook to argue that Ms. Horrocks

was directly responsible for jail operations, including maintaining personnel files,

developing a budget and ensuring proper maintenance of the jail.  The County argues that

these responsibilities provide ample evidence that Ms. Horrocks' work comprised of

management, planning, and representing the "company," among other activities, thereby

fulfilling the requirements for administrative operations.  Further, the County argues that

---

[64]29 C.F.R. § 541.205(a).

[65]29 C.F.R. § 541.205(b).

[66]29 C.F.R. § 541.207(a).

while Ms. Horrocks performed some manual labor tasks, these tasks were not her primary responsibility and that this work was "directly and closely related" to management policies and general business operations, thereby making her work exempt from the FLSA.  Finally, the County argues that Ms. Horrocks performed independent assignments, was directly responsible for the formulation and implementation of jail policies, and was free from the supervision of the sheriff while administering the day to day operations of the jail.  It argues that Ms. Horrocks regularly exercised discretion and independent judgment, and as a result, she meets the requirements for the administrative exemption short-test of the FLSA.

Conversely, Ms. Horrocks argues that she has not fulfilled the short-test requirements for an administrative exempt employee.  Ms. Horrocks first argues that she performed many manual labor tasks and the record does not demonstrate what portion of her time was devoted to these tasks.  Ms. Horrocks argues that a material question of fact exists as to whether her primary duties were non-manual and directly related to management policies or general business operations.  Ms. Horrocks next argues that the County erred by relying on the County Handbook to provide evidence of her use of independent judgment and discretion.  She argues that the County lacks evidence demonstrating that the independent and discretional responsibilities listed in the County Handbook comprised the actual work that she did.  Finally, Ms. Horrocks states that her former supervisor, Sheriff Jarvie, testified that she exercised little discretion.

At this juncture, the County has not "plainly and unmistakenly" demonstrated that

Ms. Horrocks' primary duties were non-manual, that these duties directly related to management policies or general business operation, and that these duties required Ms. Horrocks to use discretion and independent judgment.  The court cannot find that Ms. Horrocks falls into the administrative exemption of the FLSA as a matter of law. Although the County has shown that Ms. Horrocks performed a variety of administrative tasks, the record does not conclusively show that the manual tasks performed by Ms. Horrocks were not her primary duty, nor does it display that this work was directly and closely related to work requiring the exercise of discretion and independent judgment. Additionally, the County has not plainly and unmistakenly demonstrated that the work which Ms. Horrocks actually performed required the use of discretion and independent judgment.  Summary judgment on this issue is inappropriate at this point.

## CONCLUSION

Given the discussion above, the court finds that Ms. Horrocks has provided enough material evidence disputing whether Daggett County willfully violated the FLSA. Additionally, Daggett County has not met its burden on summary judgment to conclusively demonstrate as a matter of law that Ms. Horrocks' position fell either under the "executive" exemption or the "administrative" exemption of the FLSA.

The court therefore DENIES Daggett County's summary judgment motion [#17].

     SO ORDERED.

     DATED this 11th day of September, 2006.

               BY THE COURT:

               _____
               Paul G. Cassell
               United States District Judge