IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ELLEN VALEEN HORROCKS,<br><br>   Plaintiff,<br><br><br><br>   v.<br><br><br>DAGGETT COUNTY, a political subdivision of the State of Utah,<br><br>   Defendant. | **MEMORANDUM DECISION EXPLAINING DECISION TO RECUSE**<br><br><br><br><br><br>Case No. 2:05-CV-00238 PGC |

Plaintiff Ellen Horrocks has brought a Fair Labor Standards Act case, alleging that defendant Daggett County owes her overtime pay.[1]  Daggett County moved for summary judgment, and the court held a hearing on the motion.  During argument on the motion, it became apparent to me that the parties were likely to spend more money litigating the action to a final conclusion than might be awardable to the plaintiff in any favorable judgment.  At the conclusion of the hearing, I therefore invited the parties to chambers to see whether a resolution of the matter might be desirable for both sides.  During that meeting, I asked both parties whether it would be useful to them and their settlement discussions if I gave a specific dollar amount of what I believed would be a fair resolution of the case.  When both sides agreed, I gave an amount.

---

[1] *See* 29 U.S.C. §§ 201-219 (2000).

For the next week or so, the parties continued settlement discussions but were unable to arrive at a settlement. I then entered an order (an earlier version of which had been shown to the parties at the summary judgment hearing) denying Daggett County's motion for summary judgment. Ten days later, Daggett County moved for disqualification of me in future proceedings, arguing that because it had refused to accept the proposed settlement I had described, there was now an appearance of partiality. I was not previously aware that it was Daggett County that had rejected the proposed settlement.

Ordinarily, a party cannot create a grounds for recusal by its own actions. In light of all these circumstances of the case, however, I believe that recusal will best serve the interests of justice. Therefore, I recuse in this particular case.

## FACTS[2]

This is an FLSA case, in which Ms. Horrocks seeks overtime pay. In brief, from September 1998 to February 2003, Ms. Horrocks allegedly accumulated over 700 hours of compensatory time for overtime worked as a corrections officer for Daggett County. Ms. Horrocks alleges that Daggett County violated the FLSA when it refused to pay her for this compensatory time. In support of Ms. Horrocks's argument that Daggett County acted with willful or reckless disregard of its obligations to pay her overtime, Ms. Horrocks points to other seemingly similarly-situated employees that were paid overtime for their accumulated compensatory time when they left their jobs with Daggett County.

---

[2] The parties have proposed facts of their own in their pleadings on this issue. The court expressly finds the following facts occurred. The court rejects any other facts that are different than these findings.

2

Daggett County then filed a motion for summary judgment, arguing that the FLSA statute of limitations bars Ms. Horrocks's claims.  Additionally, the County contended that Ms. Horrocks's position – jail commander – is exempt from the overtime provisions of the FLSA. On August 29, 2006, I held a hearing on the summary judgment motion.

The court began the hearing by presenting a "tentative" order denying summary judgment.  In light of that tentative disposition, the court found it useful to hear first from Daggett County as the tentatively disappointed party.  Daggett County's counsel then discussed the size of the overtime claim as part of the argument that Ms. Horrocks was exempt from overtime requirements:

> MS. WOOD:  Now, you know, the prior sheriff was her friend, he hired her, he said he promised her -- I think his affidavit actually helps us because his testimony was that he promised her overtime in light of the huge responsibility of opening the jail, which just undercuts the argument that she wasn't exempt.  But if he promised her overtime and that was an enforceable promise, then she may have a contract claim. I don't think he did and I don't think she can enforce such a promise against the County.  And she didn't comply with any notification to the County, and there are a gazillion reasons why she couldn't do that now.  But that would be the claim she would have is some kind of breach of contract.  She doesn't have a claim for a three-year statute for a willful violation of the Fair Labor Standards Act because she has not one shred of evidence that the County determined that she was exempt in a reasonable fashion.  And let me point out one other thing because I think it is really important to see that this was not an after-the-fact determination.  Recall that she concedes that she's paid on a salary basis, you remember that concession.  That is usually where the argument is on these cases, was somebody actually paid on a salary basis.  The plaintiff concedes in this case that she was paid on a salary basis.  That means that she was paid a fixed salary, regardless of the amount or the quality of work performed.  Here she concedes that at all times she was paid on a salary basis. Well, if you are paid on a salary basis, you're being treated like you are exempt because nonexempt employees are paid on an hourly basis.  So the fact that she concedes that at all times she was paid a fixed salary, whether she worked 10 hours or 40 hours or 50 hours, is a concession that she was an exempt employee or the County regarded her as an exempt employee from the day she walked in the door. So this is not an after-the-fact determination.  This is not somebody who for a while was being paid on an hourly basis and then they changed.  This is somebody from the

day she started was being paid on a salary basis, which means from the day she started she was being treated like an exempt employee, which means the County did not treat -- did not willfully violate the Act when it didn't pay her overtime.

THE COURT:  How much money is at stake in this case?

MS. WOOD:  Well, Your Honor, they have claimed $11,000 because she gave herself credit on her accumulation of overtime on a daily rather than an over 40 basis. You would have to apply a fluctuating work week standard.  She did her accumulation all wrong.  And I think that there is a good possibility that there is nothing at stake here, except attorneys' fees.

Counsel for Ms. Horrocks then responded.  During his argument, he focused on the extent

of Ms. Horrocks's management duties and the reasonableness of her understanding of the

overtime claim:

MR. HAVAS:  You know, her practice of doing that, again, shows that the comp time is something that she was expecting, the County was aware of it, and the County allowed her to use the comp time in that fashion.

THE COURT: Isn't that kind of double -- is she double-dipping then, she gets -- the deal was you get some comp time, it sounds like she did get comp time and took it, and now she says I want overtime for those hours as well.

MR. HAVAS:  No, she deducts it from the -- she accumulates the comp time, then when she uses it, she deducts it from the accumulated comp time.  So she's not double-dipping, she's using comp time when she needs it, and there is a balance left.

THE COURT:  But suppose she works 60 hours one week, she's got 20 hours of comp time, so she just knocks -- how would that -- I guess she works 20 hours a week -- help me out.

MR. HAVAS:  Yes, I think what the Court is indicating if she works 20 hours a week, she would have to make up 20 hours of comp time, so she deducts 20 hours from her accumulated comp time, so the balance of her comp time is 20 hours less.

THE COURT:  So then we come along to a week where she works 50 hours, so I take it she's looking at 10 hours of overtime, why wouldn't that go into the comp time account instead of some kind of overtime account?

MR. HAVAS:  It does go into comp time, that's where the figure comes from.  She maintains a running balance of the comp time, like if she works 50 hours, she has 10 hours of comp time, she adds that to the amount of comp time she's accumulating.

THE COURT:  Is she still employed there at Daggett County?

MR. HAVAS:  Not now.

THE COURT:  When she left she has a balance of comp time that she wants to cash out as overtime?

MR. HAVAS:  Yes.

THE COURT:  Is the $11,000 – is that your calculation on everything?

MR. HAVAS:  That's based on 703 hours or something like that, but that's approximately correct.

THE COURT:  700 hours, that's 16 weeks.  People don't usually accumulate, you know, 16 weeks of comp time or something like that.

MR. HAVAS:  Well, this is over a span of about six years, and a lot of that probably was accumulated at the start-up of the jail, and that's -- as Sheriff Jarvie indicates, that was recognized at the outset that she was going to put in a lot of extra hours in starting up the jail, and that's why he indicated to her you're going to put a lot of hours in, but anything over 40 we're going to give you comp time for.  And she continued to work and just didn't take a lot of the comp time.  She had some of that by using comp time from days when she -- or weeks when she didn't have 40 hours.  But she expected to continue to work there, and if she had continued to work there, she would have continued to cash in her comp time such as going on her honeymoon the spring after she was -- she left Daggett County.  She would have taken -- I don't know how long of a honeymoon she was planning, but she would have used her comp time to continue to be paid and reduce the amount of comp time.  So that's how she accumulated as much comp time as she did.  All she's asking for is the County honors the bargain that she struck, and the County is trying to get out of it by saying that she is now an exempt employee.  But if you take just the average test into consideration, I think it becomes fairly clear that as far as the record exists right now, there are insufficient facts to say that she was either an executive employee or an administrative employee.

The discussion then continued about what would happen if I granted summary judgment

for the defendant on the federal FLSA claim and whether the plaintiff could pursue a state court

action for breach of oral contract:

> THE COURT:  If I were to change my mind on this claim, she could pursue that claim in state court, is that –
>
> MR. HAVAS:  I believe that she probably could.  I'm not positive it should have been brought with this claim in order to survive a granting of summary judgment. But obviously the one thing that she would not get are the punitive or additional compensation that she's asking for.
>
> THE COURT:  What are your attorneys' fees just roughly?  I know you don't have your time sheets.  The reason I ask that, I see an $11,000 claim here, and I'm afraid that I may be contributing to this and I'm spending more money with the lawyers here than is genuinely at stake.
>
> MR. HAVAS:  I have no idea where I am.  I know I've spent a lot of time on the case, but I don't know how many hours I've spent on the case.
>
> THE COURT:  Is it more than $11,000?
>
> MR. HAVAS:  I don't believe so.  I work cheap.

The discussion then turned to whether settlement might be appropriate, with Ms. Horrocks's

counsel directly conceding that the parties had not discussed whether continued litigation was

going to be more expensive for both sides than settling the case:

> THE COURT:  You do a nice job for your client.  Both sides have been well briefed here, that's why it's partly a tough case. . . . [O]bviously you've got around an $11,000 claim.  Let's say you've got $9,000 in fees – that's $20,000 that's at stake, assuming you were to win everything, and obviously the other side views it as zero. And I'm wondering, is there some way to split the difference and whether that would be more cost effective for everyone here than to continue to litigate this.
>
> MR. HAVAS:  It might be, but so far we haven't broached that.

> Following the colloquy, the court then gave the last word to Daggett County's counsel.

She quickly turned to whether Ms. Horrocks was paid a salary and the maximum number of

hours that could theoretically be accumulated as overtime:

THE COURT:  Let me hear from Ms. Wood then and wrap up our proceedings today.

MS. WOOD:  Your Honor, just so there is no question on the salary basis, Page 9 of their brief it is conceded that plaintiff was paid a salary, thus satisfying the first prong of the two-part exemption test.  They concede she was paid on a salary basis, which means that her compensation did not vary based on the quantity or quality of work. As I say, that is where the argument generally fails.

THE COURT:  She's keeping time sheets, why would you be keeping time sheets if it didn't make any difference?

MS. WOOD:  Your Honor, lots of people keep time sheets, lawyers keep time sheets in order to keep track of their time.  There is no question --

THE COURT:  But they turn those into their clients and say pay up for our hours, they don't turn them into --

MS. WOOD:  Well, if you want to know precisely what this plaintiff is doing with her time sheets, and this will be in trial, but just so we're clear, she credited herself comp time at a time and-a-half basis if she worked over eight hours a day.  That, of course, is not how comp time is calculated.  It is calculated on time-and-a-half if she were nonexempt under federal law for hours worked in excess of 40 in a week.  So she was crediting herself the comp time wrong.  Then she was taking paid days off based on her comp time and going and working a second job for the County out at whatever that reservoir is out there, and in that way she was making substantial compensation.  She was also running comp time more than -- she quotes the policy book, which only applies to nonexempt employees, but say a maximum of accumulation of 490 hours, she's before you asking for something like 800 hours, and to get there you have to go back not three years but six years.  In reality, if this were to go to a jury this could only involve the last year of her employment because the three-year statute of limitations only picks up the last year, it doesn't pick up all the prior years.

THE COURT:  So if you lose the jury trial but if that jury does the math the right way, what is the figure that you think that they come up with?

MS. WOOD:  Your Honor, I've had a real problem with this because if somebody is paying somebody a salary, this is why I say I don't know, if you are being paid on a salary basis, you don't simply get time and-a-half for your hours worked in excess

7

of 40.  What you have to do is compute that every individual work week.  Simple example, and it's not very simple, but just for example if her salary were $300 a week and she worked 50 hours, that would make her regular pay that week $6 an hour.  If she worked 60 hours, that would make her regular rate of pay that week $5 an hour, and then you would have to do not a time and-a-half but a half time calculation on top of that, so the week she worked 50 hours, she would get an extra $3 an hour for the 10 hours worked in excess of 40, and the week she worked 60 she would get 2.50 times the 20 hours she worked in excess of 40.  So it's a fairly complicated calculation, it's a calculation that has to go week by week.

THE COURT:  You've probably run the numbers, what's the number you come up with?

MS. WOOD:  Your Honor, I haven't run the number.

THE COURT: $2,000 or $3,000.

MS. WOOD:  No, I come up with zero because of the fact that she was calculating the time and-a-half the wrong way.  She was giving herself the comp time for time in excess of eight hours a day rather than 40 hours a week.  So I think when push comes to shove, this case is worth zero, but I haven't had somebody get a -- I haven't hired an expert to do that calculation for me because I come back to the fact there is no evidence of willfulness here.

THE COURT:  What was the deal that Lieutenant Watkins had and what if the jury says she should have been treated the same way as Lieutenant Watkins?

MS. WOOD:  I don't think Lieutenant Watkins will even be able to testify, Your Honor, it's not relevant.

THE COURT:  Let's assume you lose that argument, what was Watkins's deal, how much was he getting –

MS. WOOD:  I have no clue what Watkins's deal was.  This was a deal he made with the prior sheriff.  I think the prior sheriff's testimony which they rely on, "In order to allay Ms. Horrocks's fears and apprehension, I met with Ms. Horrocks on two occasions prior to her accepting the position as jail commander.  I met with her in Vernal, Utah, and followed up with her at another meeting at the Daggett County Sheriff's Office in Manila, Utah.  I explained to Ms. Horrocks in both of these meetings that the jail budget was tight and that she would not be paid overtime for excess hours worked over 40 in a 40-hour work week.  I also explained to her that in lieu of overtime pay, she would receive compensation time for her excess hours."  His own testimony doesn't say she was going to be paid overtime and doesn't say

that if she accumulated it she would be paid at the end.  All it says is that she could take comp time.  And with the case law we have pointed out, Your Honor, even allowing comp time to an exempt employee doesn't render their position nonexempt. The question is do we have a reasonable basis to regard her as exempt?  I think we clearly did, I think it's so clear that we should get summary judgment on that.  But even if we don't, we clearly proceeded on a reasonable basis, and, as a result, we are entitled to the two-year statute of limitations, which is the presumption.  She has to prove willfulness and bad faith under the Fair Labor Standards Act, not just on general legal principles.  Thank you, Your Honor, for your time.

At this point, I turned to future scheduling in the case:

THE COURT:  What's the next event we have scheduled, do we have a final pretrial conference and a trial date?

MS. WOOD:  We do.

THE COURT:  Do you know when our final pretrial conference is or when the trial is supposed to be?

MS. WOOD:  I didn't bring my calendar, but I know it's one of four trials I have between now and the middle of November.  It's either in early November or early October, but I didn't bring my calendar.

THE COURT:  I'm going to take this matter under advisement.  If counsel can come back to my chambers for a minute and we can look at that and take a look at some things on that.  Thanks, counsel.

Both counsel then came to my chambers.  My purpose was to see whether it would be desirable for both sides to pursue further settlement discussions.  Consistent with the approach generally taken for settlement conferences, I did not ask my court reporter to come to chambers. This was to create an atmosphere of candidness and informality.  When counsel arrived, I indicated that it appeared that, given the amount of money apparently at stake in the dispute, settlement might be less expensive (and less risky) for both sides.  I told counsel that the case was, to my mind, a very close one and that before the summary judgment hearing, I had actually

9

drafted opinions going both ways.  I further explained that the plaintiff appeared to be on stronger ground with factual arguments while the defendant appeared to have some strong legal claims. Both sides then indicated interest in having further settlement discussions.  I then asked counsel for both the plaintiff and the defendant whether it would be desirable from their perspectives if I was to give both of them a specific settlement proposal that seemed fair to me.  Both counsel specifically indicated that a specific proposal would be useful to them.  I then indicated that I thought a fair resolution of the matter was a payment of $4,000 to Ms. Horrocks from Daggett County, along with half of the attorneys' fees reasonably expended by counsel for Ms. Horrocks. I then asked counsel how much time they wanted to explore settlement, explaining that if the case settled, I would not plan to expend further time finalizing an opinion on the summary judgment issue.  Counsel indicated that they wanted until the end of the week to discuss settlement.  I told them to let me know, one way or the other, whether the case had settled by the end of the week.  If the case did not settle, then litigation would move forward on the schedule that was in place.  I also indicated that both sides were entitled to a trial on the issues if they wanted one.

By the end of the week, I had not heard back from the parties about settlement.  I directed my law clerk to call the parties.  He reported back that the parties wanted a few more days to discuss settlement.  Several more days passed, with no settlement reported.  Accordingly, on September 11, 2006, I released my opinion denying summary judgment.   The opinion was, with a few minor adjustments, the same as the tentative opinion that had been provided to the parties before the summary judgment hearing.

On September 13, 2006, defense counsel sent a letter to me requesting that I disqualify

myself from the case.  To evaluate the merits of the position, I requested a copy of the transcript

of the summary judgment hearing and awaited a response from Ms. Horrocks's counsel.  Before

the plaintiff had responded to the letter, defense counsel then filed the pending motion for

disqualification.  The motion argued that because I had been involved in settlement discussions, I

could no longer fairly preside over the trial in the matter.

### DISCUSSION

Daggett County seeks disqualification under 28 U.S.C. § 455(a).  Section 455(a) states

that "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any

proceeding in which his impartiality might reasonably be questioned."[3]  The Tenth Circuit notes

that "[u]nder section 455(a), the judge is under a continuing duty to ask himself what a

reasonable person knowing all the relevant facts would think about his impartiality."[4]  The Tenth

Circuit cautions, however, that this section "must not be so broadly construed that it becomes, in

effect, presumptive so that recusal is mandated upon the merest unsubstantiated suggestion of

personal bias or prejudice."[5]

Turning to the particulars of this case, Daggett County argues that my partiality might be

reasonably questioned because I proposed a specific amount that could fairly resolve the case.

This general claim is based on a series of specific claims, which I will discuss in turn.

Daggett County first argues that partiality is shown by the fact that I proposed a

settlement amount "without any evidence of damages . . . . [T]here had been no evidence of

---

[3] 28 U.S.C. § 455(a).

[4] *United States v. Hines*, 696 F.2d 722, 728 (10th Cir. 1982).

[5] *Id.* at 729.

damages ever introduced in the proceedings."[6]  This claim is not true.  As recounted above, during the summary judgment hearing, Ms. Horrocks presented her estimate of damages – $11,000.[7]  Daggett Country responded with its assessment of damages – $0.[8]  Thus, Daggett County's assertion is factually false.  Part of the reason for this inaccuracy may have been that Daggett County prepared its motion for disqualification hastily without benefit of the transcript of the summary judgment hearing.  In any event, the claim is without merit.

Obviously, with those damages figures in the record, all that is necessary to reach a calculation of the worth of the case is the likelihood of the plaintiff succeeding at trial and on appeal (along with the simplifying assumption that the jury will rule entirely for the plaintiff or entirely for the defense).  For instance, if a reasonable estimate of the likelihood of Ms. Horrocks prevailing on the merits at trial is 75%, and a reasonable estimate of the likelihood of her prevailing on appeal is 50%, then the estimated value of the case is approximately $4,000.[9]  Of course, trial judges are well situated to make estimates about the likelihood of prevailing at trial and on appeal because of their experience both with juries and with reading courts of appeals' decisions.   Thus, the position that my disqualification is required because there is no evidence on which to base damages is unfounded.

Daggett County next claims that disqualification is required because during the summary judgment hearing I requested Daggett County's views on the value of the case.  Daggett County

---

[6]  Def.'s Mem. Supp. Mot. to Disqualify 1-2.

[7]  *See supra* FACTS.

[8]  *See supra* FACTS.

[9]  $11,000 x 75% x 50% ≈ $4,000 (rounded to the nearest thousand).

argues:

> The amount of damages was not at issue on summary judgment, but during argument, the Judge repeatedly asked counsel for Daggett County (but not counsel for the Plaintiff) to disclose the potential dollar value of the Plaintiff's claim.  Counsel for the County initially declined to answer the question, responding that the calculation was very complex and she was not sure of the exact value.  However, Judge Cassell continued to press counsel for an opinion of a dollar value until she reluctantly stated that she suspected the dollar value to be in the area of zero dollars.  The Judge's questions did not acknowledge that counsel's opinion of the value of the claim constituted privileged work product or that the amount of the potential claims was not relevant to the summary judgment motion.[10]

It is not immediately clear how this argument (I pressed counsel too hard to obtain evidence of damages) squares with Daggett County's previous argument that there was no evidence in the record concerning damages.  More important, this claim is – once again – demonstrably at odds with what the transcript shows happened at the hearing.  As recounted in the facts above, *plaintiff's* counsel presented a dollar value of the claim in support of Ms. Horrocks's argument that she was entitled to overtime pay because she was not an executive employee:

> THE COURT:  So then we come along to a week where she works 50 hours, so I take it she's looking at 10 hours of overtime, why wouldn't that go into the comp time account instead of some kind of overtime account?

> MR. HAVAS:  It does go into comp time, that's where the figure comes from.  She maintains a running balance of the comp time, like if she works 50 hours, she has 10 hours of comp time, she adds that to the amount of comp time she's accumulating.

> THE COURT:  Is she still employed there at Daggett County?

> MR. HAVAS:  Not now.

> THE COURT:  When she left she has a balance of comp time that she wants to cash out as overtime?

---

[10]  Def.'s Mem. Supp. Mot. to Disqualify 3-4.

MR. HAVAS:  Yes.

THE COURT:  Is the $11,000 – is that your calculation on everything?

MR. HAVAS:  That's based on 703 hours or something like that, but that's approximately correct.

THE COURT:  700 hours, that's 16 weeks.  People don't usually accumulate, you know, 16 weeks of comp time or something like that.

MR. HAVAS:  Well, this is over a span of about six years, and a lot of that probably was accumulated at the start-up of the jail, and that's -- as Sheriff Jarvie indicates, that was recognized at the outset that she was going to put in a lot of extra hours in starting up the jail, and that's why he indicated to her you're going to put a lot of hours in, but anything over 40 we're going to give you comp time for.  And she continued to work and just didn't take a lot of the comp time.  She had some of that by using comp time from days when she -- or weeks when she didn't have 40 hours. But she expected to continue to work there, and if she had continued to work there, she would have continued to cash in her comp time such as going on her honeymoon the spring after she was -- she left Daggett County.  She would have taken -- I don't know how long of a honeymoon she was planning, but she would have used her comp time to continue to be paid and reduce the amount of comp time.  So that's how she accumulated as much comp time as she did.  All she's asking for is the County honors the bargain that she struck, and the County is trying to get out of it by saying that she is now an exempt employee.  But if you take just the average test into consideration, I think it becomes fairly clear that as far as the record exists right now, there are insufficient facts to say that she was either an executive employee or an administrative employee.

Given that argument, Daggett County began its rebuttal presentation by turning to the issue of the number of overtime hours.

THE COURT:  Let me hear from Ms. Wood then and wrap up our proceedings today.

MS. WOOD:  Your Honor, just so there is no question on the salary basis, Page 9 of their brief it is conceded that plaintiff was paid a salary, thus satisfying the first prong of the two-part exemption test.  They concede she was paid on a salary basis, which means that her compensation did not vary based on the quantity or quality of work. As I say, that is where the argument generally fails.

THE COURT:  She's keeping time sheets, why would you be keeping time sheets if

14

it didn't make any difference?

MS. WOOD:  Your Honor, lots of people keep time sheets, lawyers keep time sheets in order to keep track of their time.  There is no question --

THE COURT:  But they turn those into their clients and say pay up for our hours, they don't turn them into --

MS. WOOD:  Well, if you want to know precisely what this plaintiff is doing with her time sheets, and this will be in trial, but just so we're clear, she credited herself comp time at a time and-a-half basis if she worked over eight hours a day.  That, of course, is not how comp time is calculated.  It is calculated on time and-a-half if she were nonexempt under federal law for hours worked in excess of 40 in a week.  So she was crediting herself the comp time wrong.  Then she was taking paid days off based on her comp time and going and working a second job for the County out at whatever that reservoir is out there, and in that way she was making substantial compensation.  She was also running comp time more than -- she quotes the policy book, which only applies to nonexempt employees, but say a maximum of accumulation of 490 hours, she's before you asking for something like 800 hours, and to get there you have to go back not three years but six years.  In reality, if this were to go to a jury this could only involve the last year of her employment because the three-year statute of limitations only picks up the last year, it doesn't pick up all the prior years.

THE COURT:  So if you lose the jury trial but if that jury does the math the right way, what is the figure that you think that they come up with?

MS. WOOD:  Your Honor, I've had a real problem with this because if somebody is paying somebody a salary, this is why I say I don't know, if you are being paid on a salary basis, you don't simply get time-and-a-half for your hours worked in excess of 40.  What you have to do is compute that every individual work week.  Simple example, and it's not very simple, but just for example if her salary were $300 a week and she worked 50 hours, that would make her regular pay that week $6 an hour.  If she worked 60 hours, that would make her regular rate of pay that week $5 an hour, and then you would have to do not a time and-a-half but a half time calculation on top of that, so the week she worked 50 hours, she would get an extra $3 an hour for the 10 hours worked in excess of 40, and the week she worked 60 she would get 2.50 times the 20 hours she worked in excess of 40. So it's a fairly complicated calculation, it's a calculation that has to go week by week.

THE COURT:  You've probably run the numbers, what's the number you come up with?

15

MS. WOOD:  Your Honor, I haven't run the number.

THE COURT: $2,000 or $3,000.

MS. WOOD:  No, I come up with zero because of the fact that she was calculating the time and-a-half the wrong way.  She was giving herself the comp time for time in excess of eight hours a day rather than 40 hours a week.  So I think when push comes to shove, this case is worth zero, but I haven't had somebody get a -- I haven't hired an expert to do that calculation for me because I come back to the fact there is no evidence of willfulness here.

As is apparent from the transcript, the court even-handedly heard from both sides on the size of the overtime claim in this case, a relevant issue since a central question in this case is what percentage of Ms. Horrocks's time was spent on administrative duties and what percent was spent on manual duties.  Both sides briefed this general issue in their pleadings on the summary judgment motion.[11]  Further, the court never asked Daggett County for its assessment of the value of the case, but only its arithmetic calculation of the number of overtime hours multiplied by Ms. Horrocks's pay scale.  Finally, if any of these questions treaded on work product information, it was only necessary for Daggett County to make that point.  Of course, the work-product doctrine is one that must be affirmatively asserted.[12]  Daggett County never mentioned the work-product doctrine in court, raising it for the first time in the motion to disqualify.  For all these reasons, the assertion that disqualification is required because of my questions about the number of overtime hours worked is baseless.

Daggett County next argues that disqualification is required because of the court's local rules.  Daggett County points out that the local civil rule 16-3(d) provides that a judge holding a

---

[11] *See* Def.'s Mem. Supp. Summ. J. 5-10; Pl.'s Mem. Opp. Summ. J. 9-15.

[12] *Barclaysamerican Corp. v. Kane*, 746 F.2d 653, 656 (10th Cir. 1984).

settlement conference shall not communicate discussions during the conference back to the trial judge:

> The settlement judge or magistrate judge may not communicate to the trial judge to whom the case has been assigned the confidences of the conference, except to report whether or not the case has been settled. . . . If the case does not settle, no oral or written communication made during the settlement conferences may be used in the trial of the case or for any other purpose.[13]

This rule, however, is inapplicable to this case for two reasons.  First, this local rule applies only to the situations where a case has been formally referred to another judge for a settlement conference.  Thus, Rule 16-3(b) provides for referral of settlement conferences:

> Under Fed. R. Civ. P. 16(a)(5) and (c)(9) and 28 U.S.C. § 636(b)(1), the district judge to whom the case has been assigned for trial may refer it, for purposes of undertaking a settlement conference, either to another district judge or, on consultation with the parties and their counsel, to a magistrate judge.[14]

It is in this context of a referral to another judge that Rule 16-3(d) indicates that settlement confidences should not be disclosed.  Of course, if the trial judge himself holds a settlement conference, then such confidentiality is not practicable.  The Federal Rules of Civil Procedure specifically authorize the trial judge to hold a settlement conference at any time before trial.  The Federal Rules directly provide: "In any action, the court may in its discretion direct the attorneys for the parties . . . to appear before it for a conference . . . before trial for such purposes as . . . facilitating the settlement of the case."[15]

---

[13] D. Utah Civ. R. 16-3(d).

[14] D. Utah Civ. R. 16-3(b).

[15] Fed. R. Civ. P. 16(a)(5).

In this case, I had attempted to refer the matter for a settlement conference before a different judge.  I entered an order directing the parties to contact a magistrate judge by August 4, 2006, to arrange for a settlement conference.[16]  (Such an order is my standard policy in all civil cases.)  It appears that the parties ignored that order.  In any event, there is no record in the case file that the parties had gone to a magistrate judge for a settlement conference.  My efforts to hold my own, in-chambers settlement conference were intended to take the place of the aborted conference in front of a magistrate judge.

Even if local Rule 16-3(d) somehow barred disclosure of settlement amounts in the context of this particular case, that rule is inapplicable because both parties waived its application.  During the in-chambers conference, I asked counsel for both sides whether it would be helpful *to them* for me to offer a specific amount that might settle the case.  Both sides affirmatively agreed to having me tender a specific settlement figure.  It was only after receiving their permission that I proposed a specific figure.   In light of this agreement by counsel for both Ms. Horrocks and Daggett County, any application of Rule 16-3(d) has been waived by the parties.  Of course, a party can waive application of the local rules (like the Federal Rules of Civil Procedure).[17]

Finally, Daggett County argues that the mere fact that I proposed a settlement figure demonstrates an appearance of bias requiring recusal.  In support of this claim, Daggett County cites three cases, all of which are distinguishable.  Daggett County first cites two Eighth Circuit

---

[16]  Order Referring Case (Docket Entry No. 11).

[17]  *Murray v. City of Tahlequah, Okla.*, 312 F.3d 1196, 1200 (10th Cir. 2002).

cases – the 1975 case of *First Wisconsin National Bank of Rice Lake v. Klapmeier*[18] and the 1977 case of *United States v. Pfizer, Inc.*[19]  Both of those cases state that, where the judge is to serve as the trier of fact, he should not recommend an actual settlement figure before trial.[20]  This admonition has no application here, where the central aspects of the case would be tried by a jury and thus the court is not the "trier of fact."  Because the trier of fact would be the jury, there is no suggestion of bias.  As one leading treatise has explained: "A presiding judge in a jury trial, in making settlement suggestions and comments, does no more than give the parties his or her educated guess as to what the jury might do."[21]  Moreover, the Eighth Circuit took this view more than three decades ago. Since then, trial judges have become much more heavily involved in settlement discussions.  The Federal Rules were specifically amended in 1983 to allow trial judges to require the parties to attend a settlement conference,[22] in recognition of this reality.[23] The Seventh Circuit has explained that this amendment was simply a clarification of the court's inherent power to manage its own docket:

> The wording of the rule and the accompanying commentary make plain that the entire thrust of the amendment to Rule 16 was to urge judges to make wider use of their powers and to manage actively their dockets from an early stage.  We therefore conclude that our interpretation of Rule 16 to allow district courts to order

---

[18] 526 F.2d 77 (8th Cir. 1975).

[19] 560 F.2d 319 (8th Cir. 1977).

[20] *Klapmeier*, 526 F.2d at 81 n.6; *Pfizer*, 560 F.2d at 322-23.

[21] Fed. Trial Handbook, Civil § 5:26 (4th ed. 2006).

[22] *See* Fed. R. Civ. P. 16(a)(5) (historical notes to 1983 amendment).

[23] 6A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1525 (2d ed. 1990 & Supp. 2005).

represented parties to appear at pretrial settlement conferences merely represents another application of a district judge's inherent authority to preserve the efficiency, and more importantly the integrity, of the judicial process.[24]

Daggett County also cites a 1967 case from the Supreme Court of Connecticut.[25]  This case, too, involves a situation where the judge proposing a settlement offer was going to serve as the trier of fact.[26]  Moreover, even in such circumstances, this case directly recognizes that the parties can waive any objection.[27]  For all these reasons, Daggett County's authorities are not persuasive.

While Daggett County has found various out-of-jurisdiction cases on the issue of settlement discussions, it has overlooked a case from the Tenth Circuit which is quite instructive. In *Franks v. Nimmo*, Dr. Franks attempted to disqualify the trial judge because of a perceived bias stemming from settlement discussions in the judge's chambers.[28]  During a hearing on the motion to stay Dr. Franks's termination from the Veterans Administration Medical Center, the judge called all counsel into his chambers, and then spoke with the doctor alone.  In his affidavit, Dr. Franks stated "that the judge told him these matters never work out for a plaintiff unless they are settled, and that he ought to settle because the judge could not rule in his favor on the

---

[24] *G. Heileman Brewing Co. v. Joseph Oat Corp.*, 871 F.2d 648, 652 (7th Cir. 1989).

[25] *Krattenstein v. G. Fox & Co.*, 236 A.2d 466 (Conn. 1967).

[26] *Id.* at 469.

[27]  *Id.*

[28] 796 F.2d 1230 (10th Cir. 1986).

injunction issue."[29]  In response to Dr. Franks's affidavit, the defense presented statements

regarding a pending emergency surgery for Dr. Franks's wife, and statements describing the

judge's concern that a ruling against Dr. Franks would result in both a loss of health insurance

coverage for his wife and an interruption in the doctor's significant ongoing research.  The court

concluded that disqualification was inappropriate because the judge's attempts to encourage

settlement under these conditions did "not give rise to an objective appearance of bias within the

meaning of section 455(a)."[30]  The court emphasized that Section 455(a) "must not be so broadly

construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest

unsubstantiated suggestion of personal bias or prejudice."[31]  Accordingly, my involvement in

settlement discussions – and even proposing a specific settlement figure with the consent of the

parties – is not a basis for disqualification.

There is, however, one last problem in this case.  The court had envisioned the parties

conducting their own settlement discussions and then reporting back only *whether* this case had

settled, not who had declined to settle.  This was briefly discussed in chambers, as reflected in

this docket entry: "Court gave both counsel until Tuesday, September 5, 2006, to inform the

court whether settlement had been reached. If settlement is not reached, court will then proceed

with issuing an opinion on the motion for summary judgment."[32]  In contravention of that

procedure, in its motion for disqualification, Daggett County has disclosed that *it* was the one

---

[29] *Id.* at 1233.

[30] *Id.* at 1235.

[31] *Id.* (quoting *Hines*, 696 F.2d at 729).

[32]  Minute Entry (Docket Entry No. 22).

that refused to accede to the settlement figure proposed by the court.[33]  Daggett County then goes on to argue that I will be biased since I now know that it took a different view of the case than I did.

As a basis for disqualification, this claim is meritless.  The obvious rule is that a party cannot create its own grounds for disqualification.[34]  Perhaps, however, I am partially responsible for creating some confusion on whether this fact was to be disclosed.  I thought it obvious that this fact was not to be disclosed, but apparently this point was not obvious to counsel for Daggett County.  Therefore, in light of this unusual circumstance, I will exercise my discretionary power to recuse in this case.  I do not recuse lightly, since the burden of trying this matter will now fall to one of my colleagues.  But it is important that the public and litigants believe that they have been treated fairly in the process.  A recusal in this case appears to be the best way to insure that belief.

**CONCLUSION**

For the reasons stated above, the court recuses in this matter.

DATED this 23rd day of October, 2006.

BY THE COURT:

_____

Paul G. Cassell
United States District Judge

---

[33]  Affidavit of Mary Anne Q. Wood ¶ 21.

[34]  *United States v. Evans*, 262 F. Supp. 2d 1292, 1298 (D. Utah 2003).

22